UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACY CHARLES BLACK,<br><br>   Plaintiff,<br><br>   v.<br><br>DELANO REGIONAL MEDICAL CENTER, et al.,<br><br>   Defendants. | CASE NO. 1:15-cv-01124-MJS(PC)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 16)**<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Lacy Charles Black is a state prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 8.) No other parties have appeared in this action.

On July 1, 2015, Plaintiff filed his first civil rights complaint in the United States District Court for the Northern District of California. (ECF No. 1.) The case was transferred to this Court on July 20, 2015. (ECF No. 5.) On August 18, 2015, the Court issued an order dismissing Plaintiff's complaint and granting leave to amend. (ECF No. 11.) Plaintiff requested, and was granted, two extensions of time to file an amended complaint. (ECF Nos. 12 & 13, 14 &15.) Plaintiff filed the instant first amended complaint on December 3, 2015. (ECF No. 16.) Plaintiff's first amended complaint is before the Court for screening.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff's claims arose at Kern Valley State Prison ("KVSP"), where he remains incarcerated. He names the following Defendants in their individual and official capacities: Martin Biter, Warden of KVSP; Bahram Ghaffari, Chief Executive Officer of Delano Regional Medical Center (DRMC); Bruce Peters, Chief Executive Officer of Mercy Hospital in Bakersfield; Sandra Lopez, Chief Medical Officer of KVSP; KVSP Medical Doctors I. Patel, David G. Smith, Larry A Dileo, Tony M. Deeths, J. Akanno, and R. Water; KVSP Physician's Assistant C. Ogbuehi; KVSP Nurses J. Palomino, B. John, Orlando Regino, D. Ramos, M. Becina, L. Moreno, H. Ducusin, T.K. Camp, and E.C. Garrovillo; KVSP Health Care Appeals Coordinator K. Farquhar; KVSP Chief Executive Officer R. Michael Hutchinson; KVSP Deputy Director J. Lewis; KVSP Chief Physician/Surgeon M. Spaeth; and Jojo Cachola, George Conger, Darwin N. Valdez, and Vladimir Skorohod of DRMC. Plaintiff also names unidentified Defendants "0/100." Plaintiff brings claims for Eighth Amendment cruel and unusual punishment, Eighth Amendment "due diligence," negligence, and medical malpractice.

Plaintiff's claims may be summarized as follows:

On January 29, 2013, Defendants Cachola, Conger, Valdez, and Skorokhod of DRMC took x-rays of Plaintiff's left shoulder while Plaintiff was admitted at DRMC and diagnosed him with a shoulder sprain. On that same day, Drs. Deeths and Dileo of KVSP took x-rays of Plaintiff's left shoulder and concluded that Plaintiff had a "severe posterior dislocation." On January 30, 2013, Drs. Deeth and Akannon again took x-rays of Plaintiff's left shoulder, and again diagnosed Plaintiff with a severe posterior dislocation. On May 10, 2013, Dr. Smith conducted an initial surgical consultation. Plaintiff underwent shoulder surgery on June 6, 2013. Plaintiff alleges that Dr. Smith botched the June 6, 2013 surgery, in that he failed to stabilize and/or reconstruct the

humeral head in Plaintiff's left shoulder. After that surgery, Plaintiff's shoulder remained dislocated and his severe pain persisted.

Between July 14, 2013 and June 10, 2014, Plaintiff submitted nine sick call forms complaining of continuing pain. Physical therapists who had been treating Plaintiff since February 2013 reported that despite his best efforts, Plaintiff showed no signs of improvement

On March 27, 2014, Plaintiff underwent an MRI which showed the same posterior dislocation as the January 2013 x-rays. On July 15, 2014, Plaintiff was examined by a neurologist, Dr. Jian C. Lin (not a defendant) of the Kern County Neurological Medical Group. After a neurological test, Dr. Lin concluded that Plaintiff had "mild left ulnar sensory neuropathy" and "deltoid denervation" of the left upper extremity.

On October 16, 2014, Plaintiff underwent hemiarthroplasty, the surgical implanting of orthopedic hardware into the shoulder to replace the damaged humeral head. Throughout Plaintiff's ordeal, the only medication prescribed by Dr. Patel of KVSP was ibuprofen. Plaintiff's requests for morphine or a similar medication to treat his pain were denied. Plaintiff alleges that Dr. Patel was aware of Plaintiff's numerous sick call forms, the diagnoses of his primary care provider, and the results of Plaintiff March 27, 2014 MRI but still chose not to prescribe a stronger pain medication.

Plaintiff appealed his lack of treatment at numerous levels within the prison. Defendants Farquhar, Hutchinson, Lewis, and Spaeth were all aware of Plaintiff's medical issues through Plaintiff's health care appeals forms, and none intervened.

Plaintiff believes Defendants Biter and Lopez, as the supervisory personnel who employed the above-mentioned individuals and contracted with DRMC and Mercy Hospital—Bakersfield, and Lopez, as the Chief Medical Officer of KVSP, are also responsible for his injuries. Likewise, Defendants Ghaffari and Peters, as the presidents of their respective hospitals, are liable for the actions of their employees.

Between February 20, 2013 and June 10, 2015, Plaintiff submitted numerous sick call forms to the KVSP Nurses complaining of extreme pain, numbness, and other

symptoms that gave Plaintiff cause for concern.  Because of the delays in properly treating Plaintiff's damaged shoulder, Plaintiff now suffers from bone deformities, cartilage damage, loss and demineralization of the humeral head in his shoulder, and nerve damage.  Plaintiff reports he is now disabled.

Plaintiff requests damages to cover future surgeries and compensate for his mental and physical anguish; injunctive relief in the form of a transfer to an institution where he can receive adequate medical care; and for "the proper personnel" to be "held accountable and penalized."

## IV. ANALYSIS

Plaintiff claims that Defendants provided inadequate medical care in violation of the Eighth Amendment, that Defendants violated Eighth Amendment "due diligence," and that Defendants committed "negligence and medical malpractice."

There is no Eighth Amendment right to "due diligence."  The Court will proceed on the assumption Plaintiff feels Defendants failed to exercise "due diligence" in treating his shoulder injury. Such a claim comes within Eighth Amendment protection.

### A. Official Capacity Claims

Plaintiff names Defendants in their individual and official capacities.  First, Plaintiff cannot recover money damages from state officials in their official capacities.  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective relief.  See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). Additionally, "official capacity" suits require that a policy or custom of the governmental entity is the moving force behind the violation. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986).

Here, while Plaintiff seeks prospective injunctive relief, he has not alleged that any custom or policy motivated Defendants' conduct. Accordingly, Plaintiff's official capacity claims will be dismissed with leave to amend.

### B. Acting Under Color of State Law

Plaintiff names Cachola, Conger, Valdez, Skorohod, and Ghaffari of DRMC and

Peters of Mercy Hospital—Bakersfield as Defendants.

Prisoners may only bring § 1983 claims against individuals acting "under color of state law." See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Private individuals, not employed by the prison or another state agency, do not act under color of state law unless they are so closely affiliated with the state that their conduct "may fairly be treated as that of the state itself." Jensen v. Lane Cty., 222 F.3d 570, 575 (9th Cir. 2000) (citing Jackson v. Metro. Edison Co., 418 U.S. 345, 350 (1974). In the prison medical care context, such close affiliations exist where a private physician or hospital contracts with a state prison to provide care to inmates. See West v. Atkins, 487 U.S. 42, 55-56 (1988); George v. Sonoma Cty. Sheriff's Dept., 732 F.Supp.2d 922, 936 (N.D. Cal. 2010); see also Jensen, 222 F.3d at 575 (relationship between county and private psychiatric group providing mental evaluations was so "deeply intertwined" that psychiatrist who signed commitment order acted under color of state law for § 1983 purposes).

Plaintiff states that KVSP has "2 of 5 state contracts with both [DRMC] and Mercy Hospital."  The Court finds this averment to be ambiguous and the complaint lacks any information linking these institutions to KVSP.  Plaintiff has not alleged any affiliation between them and KVSP suggesting that they were acting under color of state law. Accordingly, Plaintiff's claims against Defendants Cachola, Conger, Valdez, Skorohod, Peters, and Ghaffari will be dismissed.

### C. Doe Defendants

As Plaintiff's complaint is currently pled, he has not made any cognizable claims against unidentified Defendants "0/100." Those Defendants will therefore be dismissed with leave to amend.

The use of Doe defendants generally is disfavored in federal court. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 E.2d 637, 642 (9th Cir. 1980)). Plaintiff may, under certain circumstances, be given the opportunity to identify unknown defendants through discovery prior to service. Id. (plaintiff must be afforded an opportunity to identify unknown defendants through discovery unless

it is clear that discovery would not uncover their identities). However, in order to proceed to discovery, Plaintiff must first state a cognizable claim.

Furthermore, Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, Plaintiff must distinguish between Doe defendants by, for example, referring to them as "John Doe 2," "John Doe 3," and so on, and describe what each did or failed to do to violate Plaintiff's rights. See Ingram v. Brewer, No. 1:07-cv-00176-OWW-DLB, 2009 WL 89189 (E.D. Cal. January 12, 2009) ("In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.").

### D. Eighth Amendment Cruel and Unusual Punishment

#### 1. Legal Standard

The Eighth Amendment of the United States Constitution entitles prisoners to medical care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439 F.3d at 1096). Examples of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

A prison official shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "requires more than ordinary lack of due

care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835). Instead, the prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066. Prison officials may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment," and prison doctors can be deliberately indifferent in their provision of care. Id.

With regards to course of treatment, a prison official demonstrates deliberate indifference where he or she knows that a course of treatment is ineffective but continues it anyway or delays necessary treatment without justification. See Jett, 439 F.3d at 1097-1098; Estate of Prasad ex rel. Prasad v. Cty. of Sutter, 958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013). Purposefulness may be inferred where a prison official is aware of the extent of the inmate's pain but declines to do anything to improve the inmate's situation. See Jett, 439 F. 3d at 1098. An inmate's harm need not be substantial, Id., at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992)), and even brief periods of unnecessary pain may be unconstitutional. See Clement v. Gomez, 298 F.3d 898, 904-905 (9th Cir. 2002).

Negligence, inadvertence, or differences of medical opinion between the prisoner and health care providers, however, do not violate the Eighth Amendment. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Lyons v. Busi, 566 F.Supp.2d 1172, 1191-1192 (E.D. Cal. 2008); see also Colwell, 763 F.3d at 1068 (distinguishing plaintiff's long-uncorrected cataracts from "a case of ordinary medical mistake or negligence" and finding defendants deliberately indifferent). Even a showing of medical malpractice or gross negligence is insufficient to establish a constitutional violation. Simmons v. Navajo Cty., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Rather, "the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" Snow v. McDaniel, 681 F.3d 978, 988

(9th Cir. 2012) (*overruled on other grounds by* Peralta, 744 F.3d at 1083) (quoting Jackson, 90 F.3d at 332).

### 2. Analysis

Here, Plaintiff has alleged a serious medical need: a "severe posterior [shoulder] dislocation" leading to excruciating pain, bone deformities, nerve damage, and permanent mobility deficits.

However, Plaintiff has not shown that Defendants Cachola, Conger, Valdez, and Skorohod of DRMC (even if acting under color of state law) were deliberately indifferent to Plaintiff's serious medical needs. At worst, they took x-rays of Plaintiff's shoulder January 29, 2013 and misdiagnosed a dislocated shoulder as a shoulder sprain. Misdiagnosis, even if a result of negligence or medical malpractice, does not establish a constitutional claim. See Simmons, 609 F.3d at 1019. Even assuming negligence was a factor in the misdiagnosis, mere "negligence, inadvertence, or difference[] of medical opinion" do not rise to the level of an Eighth Amendment violation. Jackson, 90 F.3d at 332.[1]

Similarly, Plaintiff's allegations, taken as true, do not reflect deliberate indifference by KVSP Drs. Deeths, Dileo, and Akannon. These doctors correctly diagnosed Plaintiff's shoulder dislocation on January 29, 2013, the same day DRMC personnel allegedly misdiagnosed it. The six month delay between this diagnosis and Plaintiff's surgery is not factually attributed to these defendants; the factual allegations do not reflect their knowledge of Plaintiff's severe discomfort and disregard of it. Merely saying they "knew about Plaintiff's pain but did nothing" about it will not suffice; Plaintiff must set forth the facts upon which he bases his conclusion.

In the same vein, Plaintiff provides no details about the nature and extent of his interactions with Dr. Smith during this six month period to attribute a "knowing disregard" to that Defendant. All that is pled about that six month period is that he had several

---

[1] Furthermore, the Court notes that Plaintiff appears to have received the correct diagnosis, a dislocated shoulder, the very same day. Thus it does not appear that the alleged misdiagnosis resulted in any harm to Plaintiff.

9

physical therapy sessions, one pre-surgical consultation, and experienced pain. There is nothing to indicate that Dr. Smith knew or should have known of Plaintiff's severe discomfort yet ignored it or even that he was in a position to have treated it before June 2013.

Plaintiff alleges that Dr. Smith violated the Eighth Amendment by "botching" the June 2013 surgery, as shown by Plaintiff's continued severe pain and the March 2014 MRI which showed a dislocation and the need for another more invasive surgery. While one might draw an inference medical error, or malpractice, from that series of events, they do not reflect deliberate indifference to or knowing disregard of Plaintiff's pain and limitations.

Plaintiff further alleges that Dr. Patel violated the Eighth Amendment by prescribing only ibuprofen instead of more potent medication, such as morphine, or for Plaintiff's severe pain. Without more, this appears to constitute a mere difference of opinion as to the correct course of treatment or a denial of Plaintiff's choice for treatment. Neither gives rise to a viable claim for relief under the Eighth Amendment. <u>Snow</u>, 681 F.3d at 987-88; <u>Wilhelm</u>, 680 F.3d at 1122-23. Plaintiff's claims against Dr. Patel will therefore be dismissed.

Plaintiff also alleges that KVSP Nurses Regino, Camp, John, Palomino, Ramos, Garrovilla, Moreno, and Ducusin violated the Eighth Amendment by ignoring his numerous healthcare complaints during the nearly 16 month period between February 20, 2013 and June 10, 2015. A deliberate disregard of, and refusal to treat, a genuine impairment or ongoing symptoms can constitute deliberate indifference. But it is insufficient to make that claim against all of these Defendants collectively just because none of them provided the treatment Plaintiff felt he needed during this period of time. Plaintiff must set out which of them he saw, when he saw them, what his complaints and symptoms were, and what their individual responses were.

Finally, Plaintiff fails to set forth any facts linking the denial of adequate medical care to Defendants Farquhar, Hutchinson, Lewis, and Spaeth. It appears that each of

these Defendants simply processed Plaintiff's health care appeals. Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted).  Plaintiff's conclusory allegation that these Defendants denied his medical appeals do not support a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

However, prison administrators cannot willfully turn a blind eye to constitutional violations being committed by subordinates, Jett, 439 F.3d at 1098 (9th Cir. 2006). Accordingly, there may be limited circumstances in which those involved in reviewing an inmate appeal can be held liable under section 1983.  That circumstance has not been presented here.  Plaintiff must set forth sufficient facts, not just conclusions, to show that an Eighth Amendment violation was occurring and Defendants Farquhar, Hutchinson, Lewis, and Spaeth turned a blind eye to it. An unsatisfactory appeals process does not demonstrate Defendants knew of and disregarded serious medical needs. Peralta, 744 F.3d at 1086-87 (involvement in reviewing an inmate's administrative appeal does not necessarily demonstrate awareness of alleged violation).  A plaintiff does not a have protected liberty interest in the processing of his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Plaintiff's claims against Defendants Farquhar, Hutchinson, Lewis, and Spaeth will therefore be dismissed.

### E. Linkage

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights.  Leer v. Murphy, 844

F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff claims generally that the medical staff of KVSP are responsible for the months of pain he suffered and the damage caused to his shoulder. However, outside of the individuals listed above, Plaintiff has not linked a particular Defendant to a violation of his rights over the course of his ordeal. Therefore, all claims against the remaining Defendants will be dismissed with leave to amend, as set forth below.

Plaintiff provides no basis for listing Warden Biter, Chief Medical Officer Lopez, Mercy Hospital CEO Peters, or DRMC President Ghaffari as Defendants in this action. These individuals all held leadership positions within their respective institutions, and none appears to have provided medical care directly to Plaintiff. Plaintiff has not indicated that these individuals were even aware of Plaintiff's injuries or treatment. As already explained, liability may not be imposed purely on the basis of a defendant's supervisory power. Furthermore, even assuming Defendants Ghaffari and Peters were in some way responsible for Plaintiff's medical care, Plaintiff has not sufficiently alleged that these individuals were acting under color of state law (see section IV.A). Plaintiff's claims against these Defendants will therefore be dismissed.

Plaintiff's claims against Dr. Water and Physician's Assistant Ogbuehi will likewise be dismissed, as Plaintiff has not linked either of these Defendants to any violation of his rights.

### F. Medical Malpractice

Plaintiff accuses Defendants of "negligence and medical malpractice." Medical malpractice is not a constitutional claim, but rather a state tort claim. To the extent Plaintiff alleges a state tort claim, the Court will not exercise supplemental jurisdiction over any state law claim absent a cognizable federal claim. 28 U.S.C. § 1367(c)(3); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1189 (9th Cir. 2001). Where a "court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing v. National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989). Here, Plaintiff has failed to state a cognizable federal claim against any Defendant, so the Court declines to exercise jurisdiction over any state claims.

Additionally, before the Court could potentially consider the validity of Plaintiff's state claims against any Defendants, Plaintiff must allege compliance with the California Tort Claims Act. The Act requires would-be tort plaintiffs to present their claims against public entities to the California Victim Compensation and Government Claims Board, no more than six months after the cause of action accrues. CAL. GOVT. CODE § 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are prerequisites to filing suit. Castaneda v. CDCR, 212 Cal. App. 4th 1051, 1061 (Cal. Ct. App. 2013); Easter v. CDC, 694 F.Supp.2d 1177, 1185-1186 (S.D. Cal. 2010). Here, Plaintiff has not alleged compliance with the Act. If Plaintiff chooses to pursue state claims, he must first present them to the Victim Compensation and Government Claims Board.

## V. **CONCLUSION**

Plaintiff's first amended complaint fails to state an Eighth Amendment or other claim against any Defendant.  If Plaintiff chooses to amend again, he should set forth the specific facts that cause him to believe a particular defendant or defendants knew, or had to know, that he needed some additional treatment, and yet knowingly turned a blind eye to that need.  Plaintiff alleges he complained of continuing pain and limitations after the first surgery and then the second surgery revealed a reasonable basis for his complaints and even suggested error in the first surgery. Those facts, alone, are not enough to meet the high pleading requirements necessary to allege a violation of the U.S. Constitution. Plaintiff must allege specific facts, if they exist, to show that a medical defendant knew, or had to have known, that Plaintiff's complaints were real, and yet that same Defendant callously declined to treat them. It might help if Plaintiff were to set out the specific dates and contents of specific discussions he had with specific defendants that reflect an unwarranted disregard of Plaintiff's symptoms.

The Court will provide Plaintiff with one final opportunity to file an amended complaint, if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez, 203 F.3d at 1130-31; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v.

14

Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint is DISMISSED with leave to amend.
2. The Clerk's Office shall send Plaintiff a blank complaint form along with a copy of the complaint filed December 3, 2015;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and
4. If Plaintiff fails to comply with this order, the Court will recommend this action be dismissed, without prejudice, for failure to state a claim and failure to obey a court order, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   June 16, 2016                          /s/ *Michael J. Seng*
                                                 UNITED STATES MAGISTRATE JUDGE

15